THE OGDENSBURGH AND LAKE CHAMPLAIN RAIL-
ROAD COMPANY, APPELLANT, v. THE VERMONT
AND CANADA RAILROAD COMPANY AND OTHERS,
RESPONDENTS.

*Construction of agreement — right of corporation to maintain action for.*

Where a railroad corporation, organized under the laws of this State, has leased
its road to a foreign corporation for a term of years, and subsequently an action
is commenced against it by the attorney-general to have its charter forfeited on
the ground that the agreement was illegal, such corporation cannot bring an
action against the corporation with which it has contracted, to have this court
decide whether or not such contract was *ultra vires*, and, if it be so, to adjudge
it entitled to recover possession of its property.

APPEAL from a judgment sustaining demurrers, interposed by
the defendants.

The complaint sets forth that the plaintiffs are a railroad corpora-
tion under the laws of New York, and the owners of a certain
railroad therein; that from their organization until March, 1870,
they used said road and performed their duties as owners of the
franchise; that in February, 1870, they entered into a written
agreement between themselves, as parties of the first part, and the
Vermont and Canada Railroad Company, a corporation under the
laws of Vermont, and the managers and trustees of the last men-
tioned railroad under the laws of that State and the decrees of the
courts thereof, as parties of the second part, which agreement was
executed by the plaintiffs, under their corporate seal, by the order
of their board of directors; that the Vermont and Canada Rail-
road Company is not incorporated under the laws of New York;
that it had made default on its bonds, and the other parties of the
second part were, at the time of executing the agreement, acting
as trustees, managers and receivers of said road, under some
decrees of the courts of Vermont unknown to the plaintiffs; that
as to the authority of such trustees, managers and receivers to
enter into the agreement, the plaintiffs are ignorant; that, at that
time, the Vermont and Canada Railroad Company was insolvent,
and had little or no property beyond the incumbrances; that the

Central Vermont Railroad Company, one of the defendants, a corporation under the laws of Vermont, claims to have succeeded to the rights of the parties of the second part in said agreement; that in March, 1870, the executive officers of the plaintiffs, in pursuance of orders of the board of directors, and in conformity with said agreement, delivered possession of the plaintiffs' railroad to the said parties of the second part; that John Schrier, one of the defendants, residing in New York, is now superintendent of said railroad, in charge thereof; and that said Central Vermont Railroad Company and said John Schrier, claiming under said parties of the second part, have possession of said railroad.

The plaintiffs further aver, that recently the people of the State of New York, through their attorney-general, have asserted and claimed that the aforesaid agreement was beyond the corporate powers of the plaintiffs; was illegal and void, and subjected the plaintiffs to a forfeiture of their charter; that the people, in 1874, commenced an action against these plaintiffs to declare such forfeiture; that the plaintiffs have kept up their organization; that the amounts payable to the plaintiffs under said agreement have been paid, and that from these moneys they have paid interest on bonds and dividends; that, since the defendants have had possession of said railroad, they have worn out and consumed large portions of the rolling stock, etc., some of which they have replaced; that the plaintiffs claim that that which has thus been supplied by the defendants has become the property of the plaintiffs by substitution.

The agreement, which is set forth at length, is, in substance, a lease of the road by the plaintiffs to the parties of the second part, for twenty years, at a rent of $386,620 for each year for the first three years, and a larger sum for the succeeding years, payable monthly, besides taxes, and $15,000 per annum for the expenses of maintaining the organization of the plaintiffs; the parties of the second part to keep up the track and equipment.

The plaintiffs aver that the agreement was made in good faith, and on the belief that it was legal; that, if it be adjudged valid, the pecuniary result is not objectionable to them, and they would be content therewith; that if it be unauthorized, they desire to be relieved therefrom, to the end that they may resume and perform their duties. And they ask a judgment of the court, whether said

agreement be beyond the corporate powers of the plaintiffs, or illegal; and that, if it be adjudged to be beyond such powers or illegal, they may recover possession of the railroad and equipment, together with all new or substituted rolling stock and equipment.

The defendants severally and separately demurred; the defendant Schrier, generally, on the ground that the complaint did not contain facts sufficient to constitute a cause of action; the other defendants on the ground of a want of jurisdiction of the persons of the defendants.

The demurrers were sustained and the defendants had judgment, from which the plaintiffs appeal.

*Wm. M. Evarts* and *L. Hasbrouck, Jr.,* for the appellant.

*Edward C. James,* for the respondents.

LEARNED, P. J.

The object of this action is to obtain the advice of the court. The plaintiffs do not allege that they have been injured, nor do they ask for redress. They wish to be informed whether a contract which they made was illegal; a matter about which neither they, nor the other party to the contract are alleged to be in doubt.

Executors and trustees are allowed to come into court for the construction of instruments and directions as to their duties. In a like manner, those standing as *cestuis que trust,* have had the same privilege. The general ground on which such actions are permitted, is, that the trustees or executors have, under some instrument, future duties to perform, about which they are in doubt; that there are conflicting claims as to what these duties are; that the duties are imposed on them by the words of some other person; that in their trust capacity, they are entitled to protection in equity. No such circumstances exist in this case. Under this instrument, there is no doubt or misunderstanding as to the plaintiffs' duties. They are simply to receive a sum of money monthly. There are no conflicting claims as to their duties under this instrument. None but the stockholders claim the money which they receive. The language of the instrument is their own, and their duties are not imposed by some other person. And the plaintiffs do not act in a trust c

city, entitling them to the protection of equity. The corporation plaintiff is a person. It has its duties undoubtedly, like other persons, but the affairs which it manages are its own.

The case is simply this: Two persons have made a contract of lease, one to the other. A third person has alleged that the lease is illegal. And the lessors ask the court to say whether it is or not. The lessors do not allege its illegality, or ask to have it set aside. On the contrary the lessors aver that they are content. And the lessees are content. There is no controversy for the court to settle. Courts do not sit to lay down principles of law, but to decide controversies. And here is none. And it is not best that courts should lay down principles, except as the result of actual controversy. To take the present case, for illustration. The question we are asked to pass upon, is, whether such a lease is beyond the powers of a corporation : *ultra vires.* Now, both the plaintiffs and the defendants apparently think that it is not; for they acted on that view ; and even now they seem to desire a decision in the negative. There is no probability, therefore, that the arguments for the affirmative will be presented with that force which they would have in a real controversy. In fact, it looks much as if this suit were brought only to obtain a *quasi* decision, which might serve as a precedent in the action brought by the people, in which it is distinctly alleged that this lease was *ultra vires,* and worked a forfeiture of the charter.

Furthermore, it may be that, while such a contract is *ultra vires,* and while the State may thereupon allege a forfeiture, yet the contracting party shall not be allowed to set up the invalidity of his own act. Or again, if the contract were beyond the power of the directors, yet, possibly, the approval of the stockholders might be sufficient to affirm it. Or, once more, it might possibly be affirmed by some of the stockholders, while others might disavow it. We do not pass on these points. We suggest them to show the impropriety of our deciding a question presented in this manner. So long as the State does not enforce a forfeiture, why should the plaintiffs raise any question as to the legality of the contract? They made it, and, until somebody objects, they would best observe it. When the State shall attempt by action to enforce such forfeiture, it will be time enough to decide in that action whether

the charter has been forfeited by reason of this lease. When a stockholder shall complain that the directors transgressed their powers in making this lease, it will be time enough to inquire whether he has not ratified their act.

And again: Whenever executors or trustees, or the *cestuis que trust*, come into court for the construction of an instrument, they bring in as parties all who are affected by the conflicting construction. Now, in the present instance, if there be any one who claims that the lease is void, as *ultra vires*, it is the people; yet they cannot be heard in this action.

The plaintiffs have carefully omitted in their complaint any allegation that the lease is illegal, or that they desire to have it set aside. They only allege that, *if it is illegal*, they desire to be relieved therefrom.

It may be said that the plaintiffs, as a railroad corporation, have certain public duties, and therefore ought to be instructed as to the legality of their acts. It is enough to say, that if, before entering into this contract, they had brought an action similar to the present, stating their intention to enter into such a lease, and the threat of the attorney-general that the lease would be *ultra vires*, and their desire that the court should adjudge whether or not such a lease would be valid, no one would have thought that such an action could be sustained. Now they have acted; if legally, it is all right; if illegally, they must, like other persons, take the consequences. Thus far the consequences have contented the plaintiffs and the defendants.

We may see that the view above taken of the nature of this action is correct, if we consider what judgment could be granted on default. (Code, § 275, sub. 1.) The plaintiffs could not have a judgment that the contract was illegal, but only an adjudication whether or not it was illegal; and as none of the parties to the action aver its illegality, the court would be deciding a matter not disputed. It is possible that the plaintiffs are unwilling to aver that the lease was *ultra vires*, lest such an averment should be used to their prejudice in the suit of the people. But, however that may be, such unwillingness shows the absence of all controversy between the parties to this action. They seem to be in complete harmony, which the court ought not to disturb.

This action, then, cannot be maintained. There is nothing before us which calls on us to decide whether or not this contract was *ultra vires.* It is therefore unnecessary to decide the question of jurisdiction. In the general view taken by the Special Term of this matter we concur. In a proper action, brought by the plaintiffs to recover possession of property within this State, to which the non-resident defendants or the foreign corporation claimed some title or interest, we do not understand that the Special Term held that no jurisdiction could be obtained; jurisdiction that is sufficient to enable the court to adjudge possession of the property. In accurate language, there is probably no action now (except in admiralty) which can be called an action *in rem.* But some times the subject of the action is real or personal property in this State. Then the court can obtain a *quasi* jurisdiction of non-residents and of foreign corporations. (Code, § 135, sub. 4.)

The judgment and order appealed from should be affirmed.

Present — LEARNED, P. J., and BOARDMAN, J.

Judgment affirmed, with costs.